Zenner, Administratrix, and another, Appellants, vs. Chicago, St. Paul, Minneapolis & Omaha Railway Company, Respondent.

*September 9—October 8, 1935.*

For the appellants there was a brief by *W. H. Stafford* and *Harold E. Stafford,* both of Chippewa Falls, and oral argument by *Harold E. Stafford.*

For the respondent there was a brief by *John F. Baker* of Milwaukee and *Alexander Wiley* of Chippewa Falls, and oral argument by *Mr. Baker.*

WICKHEM, J.   The first question on this appeal is whether there was a jury issue as to defendant's negligence.   Plaintiffs' evidence as to the sounding of the bell and whistle was negative in form, and the question is whether it also had this quality in substance.   If it did, it was ineffective as a matter of law to put in issue the positive testimony of six witnesses that the bell was rung and the whistle sounded.   *Richter v. Dahlman & Inbush Co.* 179 Wis. 7, 190 N. W. 841; *Wickham v. Chicago & N. W. R. Co.* 95 Wis. 23, 69 N. W. 982; *Sutton v. Chicago, St. P., M. & O. R. Co.* 98 Wis. 157, 73 N. W. 993; *Jordan v. Osborne,* 147 Wis. 623, 133 N. W. 32; *Linden v. Minneapolis, St. P. & S. S. M. R. Co.* 156 Wis. 527, 143 N. W. 167; *McMillan v. Chicago, M. & St. P. R. Co.* 179 Wis. 323, 191 N. W. 510; *Shaffer v. Minneapolis, St. P. & S. S. M. R. Co.* 156 Wis. 485, 145 N. W. 1086.   While purely negative testimony is not enough to raise an issue of fact for the jury, testimony negative in form may, under certain circumstances, be considered to be positive in substance and sufficient to raise an issue of fact.   In order to do so, however, it must appear that the

witness so testifying was in a position where he could hear or see; that his attention and his senses were directed to ascertaining whether the event was about to occur, and that the event did not happen.

It will be convenient, for the purpose of analyzing the testimony, to consider the bell and the whistle separately. Plaintiffs' first witness was one James Seibel. Seibel was standing about fifty-four rods from the crossing at the time of the accident. He testified that he did not hear a whistle blown; that the whistle was not sounded "that I heard." He testified that he would know if it had been sounded and that he could have heard it. He testified that he noticed that there was no escaping of steam such as usually accompanies the blowing of a whistle, but this testimony is of no materiality because he did not see the train until long after it had passed the whistling post. He also states that he was not particularly paying attention to ascertain whether the whistle was blowing. It is evident, (1) that he was in no position to see the outward evidence of the train whistling; (2) that he was paying no special attention to the matter of the whistle; and (3) that his testimony is negative in form and substance.

The next witness was Joe Rauscher. He lived about a mile south of the crossing and was standing in his yard. It is not clear that he could not have heard the whistle or seen the escape of steam from it, but it is clear that he was not giving the matter any particular attention. He was asked: "Was there anything unusual about it that morning, that you noticed?" Answer: "Well, no, I didn't stop much to think. I went on with my work afterwards." He was asked if they had blown the whistle at all before that, and he answered: "No, I didn't hear it before," and stated that he could have heard it. The witness was examined by investigators for the railway company after the accident, and was cross-examined concerning his statements on that occa-

sion. In that statement he said that he did not remember hearing any whistle. "It may have whistled for all I know, as I paid no attention to whether it did or not." While under ordinary circumstances this might be considered as merely a conflicting statement going to the weight of his testimony, it was reaffirmed on the trial when Rauscher stated that he told the truth on the occasion of that interview. This gives meaning to his direct testimony, which in the light of it must be construed to mean that the witness paid no particular attention, doesn't remember hearing the whistle, and thinks he would have heard it had it blown. This is no more than negative testimony under the rule. If the reaffirmation of these statements made before the trial be not given this effect, his testimony is left in a hopelessly contradictory state, and a jury would only conjecture at what its purport actually was.

Bernard Rauscher lived a mile south of the crossing. He testified on direct examination: "I noticed he didn't blow the whistle. I could tell that because I seen the train. If he had blown the whistle I could have heard it." On cross-examination he states that he told the investigator that he heard the whistle. His testimony as adduced on cross-examination is flatly contradictory to his statements on direct examination, and is to the effect that he paid no attention to whether it whistled. If his testimony is not to be treated as so contradictory as to be entirely nugatory, it must be held to be negative, for the reason that he was not paying attention to the event in question.

Mary Rauscher lived about a mile south of the crossing, and was doing her housework in her home. The train was about three-quarters of a mile from the crossing when she saw it. She did not know how close the train was to the crossing when it passed out of her view. If it was more than a quarter of a mile from the crossing at that time, the

fact that she paid no attention to the train until after the crash would make her testimony completely negative, and the fact that the whistle had not sounded up to that time would be of no materiality since the time for sounding the whistle had not arrived. Her testimony to the investigator before the trial was that she did not know whether the train whistled or not, as she really did not pay any attention to the whistle when the train stopped. Her testimony obviously raised no issue.

It is our conclusion that plaintiffs' testimony relative to the sounding of the whistle must be held to be wholly negative in character and ineffective to raise an issue.

The same witnesses are relied upon to establish the failure to sound the locomotive bell. All of plaintiffs' testimony, with the exception of Seibel's, may be passed over with the statement that it is on a par with the testimony respecting the whistle, and is clearly negative both in form and substance. A detailed analysis would unduly extend this opinion and would be unprofitable. Seibel's evidence cannot be so disposed of. He testified: "Before the collision I know the bell didn't ring. I know because I stood right out there in the yard. I was looking at the bell to see if it was ringing. It was not swinging. I was in a position to hear it if it had been ringing. I have heard it ringing on other occasions when they did ring the bell." This is positive testimony under the tests laid down by the cases, and heretofore set out. It is our opinion that it raised an issue of fact for the jury, so far as the ringing of the bell is concerned. It follows that the trial judge was in error in holding that there was no jury issue.

Normally this conclusion would result in a new trial in order that the jury might have an opportunity to reappraise the percentages of negligence attributable to defendant and to deceased, in the light of the single issue with respect to

defendant's negligence. It is contended by defendant that, upon the verdict as rendered, this court should say as a matter of law that deceased was at least as negligent as defendant. In view of the court's conclusions, it is unnecessary to consider defendant's contention in the form presented. The question is much narrower than that propounded by defendant. It must now be taken as a verity that defendant discharged its statutory duty with respect to the whistle, and failed so to do with respect to the bell. Based upon its conclusion that defendant was negligent in two respects, the jury found defendant's negligence to constitute sixty per cent of the total negligence involved in the accident, and appraised the negligence of deceased at forty per cent. Certainly the high percentage of negligence found against deceased was entirely justified. The day was bright and clear. The view was unobstructed and excellent. There was not a single, adequate reason for the failure of deceased to maintain a lookout and to discover the approach of the train. When it is further considered that deceased was a carrier of freight for hire, and required by the provisions of secs. 85.92 and 194.01, Stats., to stop at a distance not more than forty nor less than twenty feet of the railroad track, it becomes at least doubtful whether a jury could hold deceased less negligent than defendant, even if neither warning was sounded by defendant. When the negligence of deceased is balanced against the single default on the part of defendant in sounding the bell, we think it must be said, especially in view of the percentages found by the jury in this case, that the negligence of deceased as a matter of law is at least as great as that of defendant. The whistle having been sounded, the contribution of defendant's default with respect to the bell would seem to have so little proximate connection with the accident as to be hardly comparable to the entire lack of precaution by deceased and the violation of his statutory

duties as a freight carrier. If the jury could legitimately assess the percentage of deceased's negligence at forty per cent, in comparison with two distinct violations by defendant, there could be no rational ground for assessing his negligence at less than fifty per cent, with only one default by defendant remaining in the case. This court has declined in every case so far presented to set aside the jury's verdict establishing percentages of negligence. *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 245 N. W. 97; *Brown v. Haertel,* 210 Wis. 345, 244 N. W. 630. However, the power of the court to do so has been asserted with equal consistency, as well as its power, where the percentages are grossly disproportionate, to set aside the verdict and order a new trial. *McGuiggan v. Hiller Brothers, supra; Brown v. Haertel, supra; Dohr v. Wisconsin Central R. Co.* 144 Wis. 545, 129 N. W. 252; *Hammer v. Minneapolis, St. P. & S. S. M. R. Co.* 216 Wis. 7, 255 N. W. 124. It must be apparent that the cases in which this power may properly be exercised will be extremely few. This is due to the general absence of any yardstick by which the jury's conclusions may be checked. In this case the jury have furnished at least a partial standard in their assessment of percentages. The peculiar facts of this case call for an application of the power of the court to consider the relative negligence of the parties, and upon the record we hold that the negligence of deceased must be considered as a matter of law to be as great as that of defendant. This precludes a recovery.

*By the Court.*—Judgment affirmed.