Geyer, Respondent, vs. The Milwaukee Electric Railway & Light Company, Appellant.

*January 10—February 7, 1939.*

For the appellant there was a brief by *Shaw, Muskat &
Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*
*Werner J. Trimborn* and *Eugene L. McIntyre,* both of
Milwaukee, for the respondent.

FOWLER, J. The defendant makes several assignments of
error but under the view we take of the evidence we need
consider only one. That one is that the negligence of the
plaintiff was as matter of law as great or greater than that
of the defendant. Hence no recovery can be had under the
comparative-negligence statute, sec. 331.045, which denies
recovery in such case.

The plaintiff sues to recover for injuries sustained in a
collision between a bus of the defendant and the automobile
she was driving at the intersection of West Highland boule-
vard and Thirty-Seventh street in Milwaukee. The plaintiff
was driving south on Thirty-Seventh street and the bus was
traveling east on the boulevard. A jury found both the
plaintiff and the bus driver guilty of causative negligence,
both as to lookout, and the bus driver as to speed also. The
comparative negligence of the two was fixed by the jury,
twenty-five per cent to the plaintiff, seventy-five per cent to
the bus driver. Judgment was granted to the plaintiff for
seventy-five per cent of the damages assessed to the plaintiff. .

The boulevard has a grass or parked plot forty feet wide
in the center, with a driveway on either side. The south
driveway is 28.8 feet wide and for eastbound traffic only.
The north driveway is 27.7 feet wide and for westbound

traffic only. It is an arterial highway with a speed limit of thirty miles per hour by ordinance of the city. There is no dispute as to the speed of the bus involved in the collision. Nowhere within the block next west of the intersection did it exceed twenty-five miles per hour, and as it neared the intersection its speed was eighteen to twenty miles per hour. Thirty-Seventh street is not an arterial highway. It is 30.4 feet wide between curbs and a stop sign is placed a short distance north of the north curb of the boulevard. There was no obstruction of view to the west from a point some distance north of the stop sign.

By plaintiff's testimony she obeyed the stop sign on approaching the westbound driveway of the arterial. She looked both ways. She saw nothing at her left in the westbound driveway to interfere with her crossing that lane. She saw lights which she recognized as of motor vehicles at her right on the eastbound driveway one hundred fifty to two hundred feet away as she thought, but did not notice that a bus was approaching. She started up and proceeded until she neared the center of the grass plot in the center of the boulevard when she looked again to her right and saw the lights of the bus which she thought were then one hundred feet away. She was going ten miles per hour according to her statement. She then proceeded without increasing her speed and without looking again and went over thirty-five feet before reaching the line of travel of the bus which by all the testimony was well to the south of the center of the south driveway. Her judgment as to the distance of the bus when she last looked west was demonstrably faulty, as according to the undisputed testimony it was traveling only twice as fast as she and would travel not more than seventy feet, while she was traveling thirty-five. While crossing the north driveway it was the plaintiff's duty to look to her right again before she entered the south driveway, which was in effect a separate street. *Heintz v. Schenck,* 176 Wis. 562, 568, 186

N. W. 610. Manifestly she violated the right-of-way statute, sec. 85.18 (1). She could stop at her speed by her testimony in three feet. The bus at its speed of twenty miles per hour could not be stopped in less than forty or fifty feet. Effort was made to excuse her not looking again to the right by claiming that when she saw the bus one hundred feet away she formed a judgment as to its distance and judged that she had time to pass ahead of it. She did say that when she last looked at the bus she "felt" that she could pass ahead of it. One who on approaching a street intersection is thirty-five feet or more from the line of travel of an oncoming automobile coming from his right and to whom he owes the right of way, jumps at the conclusion that the automobile is one hundred feet away when it is in fact not more than seventy, believing that it is traveling twenty miles an hour and he ten, "feels" that he has time to pass ahead of it, is not exercising a reasonable judgment, and nothing short of reasonable and considerate judgment can justify failure to yield right of way. One so acting is taking a chance, is inviting injury. The plaintiff's situation is like that of the plaintiff in *Goldmann v. Milwaukee E. R. & L. Co.* 123 Wis. 168, 170, 101 N. W. 384. The plaintiff, according to his testimony, was driving a horse and wagon approaching a street on which was a streetcar track. He stopped fifteen feet from the near crosswalk, looked to his left and saw a car a block away. He started up and continued without again looking and was struck while crossing the track. It is said of his conduct (p. 170) :

"Had plaintiff looked while driving from the crosswalk to the streetcar track . . . looked even once more at the approaching car, he must have observed, according to his own description, that its speed was such as to make the crossing perilous unless he greatly accelerated the movement of his horse or that of the car was diminished. During all this period, however, with full opportunity to look and see, he

proceeded without a glance, relying, if he thought at all, on his reasoning as to the safety. Reasoning, however, is not due care when opportunity for observation exists. It is only when deprived in some degree of such opportunity that one may, consistently with due care, rely on his judgment as to chances."

The same may be said of the instant plaintiff under the circumstances here existing. At the time of the occurrence involved in the case cited, 1901, there was no right-of-way statute applicable to the situation involved as there is here. With stronger reason than there is the rule there applied applicable here. In these days of congested automobile traffic strict obedience to the right-of-way statute is essential to public safety. To excuse violation of it under the circumstances existing in the instant case would be to disregard public safety.

We will compare the conduct of the bus driver with that of the plaintiff. The bus driver claims that he did not see the plaintiff's car until the instant it was about to pass another car that was stopped on the west side of Thirty-Seventh street close to the center waiting for the bus to pass. Whether a car so stood is highly important in comparing negligence. That a car so stood is testified to by all three occupants of the car. They all testified that they came west on the north driveway and turned south onto the boulevard to go south on Thirty-Seventh street, and stopped to allow the bus to pass. These witnesses are apparently credible. We see no possible reason to doubt the truth of their statement. The bus driver's attention was fixed on this car which he saw making the turn. He slacked speed to see what the driver was to do and when the car stopped increased his speed somewhat to pass ahead of it. It was then that he first saw the plaintiff's car. The plaintiff said she did not notice the standing car and two other witnesses did not see it, one the only passenger in the bus and the other the driver of a car

trailing the bus. Both of these witnesses corroborated the testimony of the driver of the bus as to his conduct. The bus driver applied his brakes full force immediately on exclaiming when he noticed the plaintiff's car. The passenger in the bus, who was immediately behind him looking over his shoulder, corroborated this. Skid marks of the bus extended twenty-two feet. There is nothing from which it could be inferred that a car did not turn south onto Thirty-Seventh street and stop, except the negative testimony of the plaintiff, the passenger in the bus, and the driver of the trailing car that they did not see it, while the positive testimony of four witnesses is that it did so turn and stop, three of them occupants of the automobile and the other testifying positively that he did see it and governed his conduct by what he saw. These were all the persons who saw the collision or were present at the time of it. We consider that this is insufficient to raise an issue as to that particular fact. *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 126, 262 N. W. 581.

We consider also that there is no evidence to sustain the finding of the jury that the speed of the bus was excessive. The lawful speed limit was thirty miles per hour. The bus was traveling well within that limit. Such is the undisputed testimony and the admitted fact by the plaintiff's own testimony. True that on a thirty-mile-per-hour street circumstances may exist that render a far less rate of speed negligent, such as ice or fog or storm or the like. But here no such conditions existed, and the burden is on the plaintiff to show such conditions in order to prove a negligent speed. True the bus was approaching a street intersection. There was nothing to the south requiring a stop to yield the right of way. The traffic from the north would presumably yield the right of way. No occasion would arise to reduce speed for traffic from the north until the driver noticed that some-

one was violating duty in that respect. True a proper look-out would have disclosed the plaintiff's failure of duty. But the breach of the driver's duty was as to lookout, not speed. The failure of duty in that respect covers speed under the circumstances here present.

Under the whole situation involved it seems manifest to us that the negligence of the plaintiff exceeded that of the bus driver as matter of law.

*By the Court.*—The judgment of the circuit court is reversed with directions to dismiss the complaint.