PATTERSON, Respondent, vs. CHICAGO, ST. PAUL, MINNE-
APOLIS & OMAHA RAILWAY COMPANY, Appellant.

*September 10—December 3, 1940.*

*John F. Baker* of Milwaukee, for the appellant.

For the respondent there was a brief by *Rieser & Mathys* of Madison, and oral argument by *C. G. Mathys*.

The following opinion was filed October 8, 1940:

Fritz, J. On this appeal defendant relies on several assignments of error, including error in the denial of its motions for a directed verdict and for judgment notwithstanding the verdict on several grounds. In order to pass upon the errors assigned in these two respects, it suffices to note but the following facts. Plaintiff was injured at 2:25 o'clock a. m. on September 5, 1937, upon being struck by a switch engine operated by defendant's employees while he was walking northward across the main track for eastbound trains at defendant's passenger station in Altoona. This track ran southeasterly and northwesterly immediately to the north and parallel*to defendant's depot platform. He testified and claims that his purpose in crossing the track was to deliver a message and some money to a female passenger on a westbound train which was standing on another main track used for such trains. Between these two tracks there was a concrete track platform and from it to the east end of the depot platform there was a five-feet-wide planked crosswalk. The depot platform, which was along the north side of the depot and extended ten feet to the east thereof, was fifteen feet wide. Running southward from the east ten feet of the depot platform, and at a right angle thereto and adjacent to the twenty-three-feet-long east side of the depot there was a ten-feet-wide concrete walk about fifty feet long. About ninety feet south of that walk and the depot grounds there was a restaurant. Plaintiff claims that he walked northward from the restaurant across the ninety-feet-wide space between it and the ten-feet-wide concrete walk at the easterly side of the depot, and then north along about the middle of this walk and across the east end of the depot platform to the planked walk which extended from the depot platform to the track platform across the eastbound main track. About eight feet east of this crosswalk there was a switch stand at the side of the eastbound main track for the purpose of throwing the switch for the track

which ran southeasterly from the eastbound main track about fifteen feet east of the switch stand. These tracks separated at an angle which was so acute that at about one hundred forty feet east of the depot platform the south rail of the switch track was not over fifteen feet south of the main track. Consequently, an engine, whether it was on the switch track or on the eastbound main track in approaching the crosswalk from a point one hundred forty feet east therefrom, was clearly within view at all times, as it approached the crosswalk, of a pedestrian walking northward, as plaintiff did, the distance of one hundred fifty feet from the restaurant to the concrete walk at the east side of the depot and along it to the crosswalk. At the time of the accident the depot grounds and yards were lighted by flood lights so that it was almost as light as day; and plaintiff, who was twenty-six years of age and had worked for the defendant on the platform which extends into the east yard, and knew that trains were due at about that time and might be coming in either direction on the main tracks at any time, considered the crossing a dangerous place. At the time in question, defendant's eastbound passenger train was standing on the eastbound main track with its rear end about four hundred eighty feet east of the crosswalk, and the switch engine, pulling two or three cars, was backing westerly with the tender in the lead at six to eight miles per hour toward the crosswalk. During the entire movement the headlight on the lead end of the tender was lit, and the bell on the switch engine was ringing according to some of the testimony, although plaintiff testified that there was considerable noise around there and he did not hear a bell ring. There was no brakeman on the tender, and no guard on the ground for the purpose of warning or protecting persons traveling on the crosswalk or signaling the engineer of his safe approach thereto. There is a conflict in the evidence as to whether the engine was coming off the switch track when

it struck plaintiff. He testified that just before entering the crosswalk he looked eastward along the eastbound main track and saw the rear end of the standing eastbound train, but that the switch engine was not then on that track, and that he did not see it at all until it was too close to enable him to avoid being struck. He was struck on his right side by the tender and thrown on the 'track, where he lay between the rails. His right leg was severely injured.

· At the close of the testimony defendant moved for a directed verdict, but the court concluded to submit questions for a special verdict, in answer to which the jury found as follows: (1) At the time of his injury plaintiff was walking on the crosswalk across the eastbound main track toward the westbound train for the purpose of delivering a message and financial assistance to a female passenger on that train; (2) that at and shortly before the time of his injury he was causally negligent in failing to look for an approaching train or engine; (3) but that he did not negligently fail to listen for an approaching train or engine; and (4) that he was not guilty of gross negligence in stepping in front of the approaching engine. The jury further found, on the other hand, (5) that defendant was causally negligent in failing to provide a guard near the crosswalk for the purpose of warning persons, who might be traveling between the depot platform and the westbound train, of the approach of the switch engine, and also of signaling the engineer of the engine of his safe approach to the crosswalk; (6) but that the engineer did not negligently fail to slacken his speed while plaintiff was within the range of the engineer's vision and approaching the crosswalk, and (7) did not negligently fail to sound the engine whistle after seeing plaintiff approaching; and (8) that of the total causal negligence thirty per cent was attributable to plaintiff, and seventy per cent to defendant.

Defendant contends that because plaintiff's testimony is incredible there was no sufficient basis for the jury's finding

that his purpose in walking across the track was to deliver a message and financial assistance to a passenger on the westbound train; and that, consequently, his status must be considered that of a trespasser, or at most a licensee, who, as such, was not within the class of persons to whom defendant owed the duty of exercising ordinary care. These contentions cannot be sustained. Although there is room for considerable doubt under the evidence it did admit, if the jury considered plaintiff's testimony credible, of the finding returned by the jury in respect to plaintiff's purpose in proceeding to cross the track. Consequently, the denial by the court of defendant's motion after verdict to change that finding of the jury by substituting an answer to the contrary cannot be held to constitute reversible error; and no purpose will be served by a discussion of the testimony in detail. The finding as approved by the court warranted its conclusions that plaintiff was on defendant's premises by an implied invitation, and that consequently defendant owed plaintiff the duty to exercise ordinary care. Restatement, Torts, § 332 (d); *Banderob v. Wisconsin Cent. R. Co.* 133 Wis. 249, 113 N. W. 738; *Himstreet v. Chicago & N. W. R. Co.* 167 Wis. 71, 166 N. W. 665; *Fournier v. New York, N. H. & H. R. Co.* 286 Mass. 7, 189 N. E. 574,—note in 92 A. L. R. 614.

Although the jury found that the engineer did not negligently fail to sound the engine whistle after seeing plaintiff approach the crosswalk, or to slacken his speed while plaintiff was within the range of the engineer's vision and approaching the crosswalk, it was within the jury's province, under the evidence, to find that defendant was causally negligent in failing to provide a guard near the crosswalk for the purpose of signaling the engineer of his safe approach thereto, and of warning persons walking between the depot and the westbound train of the approach of the switch engine. However notwithstanding defendant's negli-

gence in these two respects, the jury's finding that defendant's negligence constituted seventy per cent of the total causal negligence as compared to the plaintiff's causal negligence was not warranted in view of undisputed facts from which it appears conclusively that he was causally negligent in failing, as the jury found, to look for an approaching train or engine before stepping onto the track; and in stepping into the pathway of the oncoming engine when it was so close that he could not walk across the track in safety.

If plaintiff was about to cross the track in question for the purpose stated in his testimony, then the following well-established rules were applicable to him, to wit:

A traveler about to cross a railroad track "is not only bound to look and listen to discover whether a train is dangerously near or not, but is bound to make the discovery of one if there be such plainly visible, or plainly within hearing, and to use his senses in that regard at the last opportunity before going upon the track" (*Clemons v. Chicago, St. P., M. & O. R. Co.* 137 Wis. 387, 392, 119 N. W. 102); and this rule "excludes the idea that one can step upon a railway track, under any legitimate inference that it is safe to do so, without first performing the duty to look and listen and see and hear those things which one so circumstanced might well see and hear by vigilant effort to that end." (*White v. Minneapolis, St. P. & S. S. M. R. Co.* 147 Wis. 141, 150, 133 N. W. 148.)

"In the case of a foot traveler the zone of danger is so narrow and it is so easy for the traveler to reach a place of safety or to remain there that no close comparison can be made between one traveling on foot and one driving a team or an automobile. . . . The foot passenger has perfect and instinctive control of himself and can almost instantly step outside the zone of danger." *Dax v. Chicago, M. & St. P. R. Co.* 185 Wis. 432, 434, 201 N. W. 736; *White v. Chicago & N. W. R. Co.* 102 Wis. 489, 493, 78 N. W. 585; *Schlimgen v. Chicago, M. & St. P. R. Co.* 90 Wis. 186, 194, 62 N. W. 1045.

Even though he was lawfully on the depot grounds, his failure to comply with these rules is not excused by his depending upon the defendant to guard against injury to him. As this court said in *Steber v. Chicago & N. W. R. Co.* 115 Wis. 200, 205, 206, 91 N. W. 654,—

"The duty of a person about to step upon a railway track to look both ways and listen, and to discover those dangers which can be readily discovered by the exercise of ordinary attention to that end by one so circumstanced, and not to go upon the track in the face of such dangers, is absolute. It is as firmly established as any rule of law can well be. If it were a fact, as claimed in this case, that the deceased had the rights of a passenger as regards care for her safety by the railway company, and that she had no other way of reaching her destination than by going across the railway track, that does not constitute any exception to the general rule stated. She was bound to exercise ordinary care for her own safety, and she fell below that standard in failing to use her senses to discover the approaching engine, since, from all reasonable inferences from the evidence, it was in sight and hearing and so near the crossing as to render it dangerous for her to step upon the track when she did so. . . .

"Counsel seems to think that she had the rights of a passenger, and that no other way to reach her destination than the one she pursued was open to her, hence that she was excused for proceeding as she did, regardless of the probability of danger, and was warranted in depending upon respondent to avoid injuring her. We know of no such rule of law. There is no such rule. No one is excusable for stepping upon a railway track without first using the precautions we have stated for his own protection. As has often been said, the mere presence of the track is an efficient warning of danger. That warning must be reasonably heeded by a person about to cross the track, else he will be presumed conclusively, as a matter of law, to assume the risk of doing otherwise." See also *Jacky v. McAdoo,* 172 Wis. 262, 177 N. W. 885.

In view of these rules the following facts are of controlling significance in passing upon plaintiff's conduct as he approached and attempted to cross the track in question. He was familiar with the depot grounds, the location and use of the tracks, and the customary switching operation in relation to the eastbound train, and knew that trains might be coming in either direction at any time on the main tracks, and that this was a dangerous place. The switch engine, whether it was on the main track or the switch track as it traveled westward at six to eight miles per hour over the last one hundred forty feet of its approach to the crosswalk, was in plain view of plaintiff, if he had but glanced slightly to his right as he walked northward from the restaurant to the place at which he was struck. It appears from the engineer's uncontradicted testimony that, when the engine tender was forty feet from the crosswalk, plaintiff was at about the northeast corner of the depot, which was about fifteen feet to the south of the crosswalk. Proceeding, respectively, from these points toward the place of the impact, when plaintiff, walking at three to four miles per hour, arrived at a point three feet from the track, where he would have about his last opportunity to look for an approaching train before entering the zone of danger, the engine, approaching at six to eight miles per hour, was probably about fifteen feet from the crossing. At merely that distance it certainly was within his view if he had but glanced slightly to his right. However, instead of doing so then, or any time while the engine traveled the last one hundred forty feet of its approach, plaintiff, apparently with nothing to divert his attention, stepped onto the track and to the point of impact without ever seeing the engine until it was about a foot from him and he was right between the rails, according to his own testimony. Although the jury found that he was not guilty of *gross* negligence in

thus stepping into the pathway of the approaching engine, his conduct in this respect manifestly bordered on recklessness to such an extent that he was certainly guilty of ordinary negligence, which caused his injury, as a matter of law. That negligence, in connection with his admitted failure to see the oncoming engine at all while he was walking to the crossing and could readily have observed it and avoided the accident, compels the conclusion that his causal negligence was at least as great as that of the defendant in failing merely to provide a guard at the crossing. Although defendant's failure in the latter respect may have constituted negligence, it became operative as a cause only after plaintiff negligently stepped onto the track in the face of the obvious danger, which he could have readily discovered but for his utter disregard of the absolute duty on his part to look and listen both ways to discover such danger by the exercise of ordinary care, and not to go upon the track in the face thereof. *Steber v. Chicago & N. W. R. Co., supra.*

It follows that the court erred in denying defendant's motions for a directed verdict, and judgment notwithstanding the verdict; and that therefore the judgment must be reversed with directions to enter judgment dismissing the complaint.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.

Wickhem, J. (*dissenting*). I can discover here no yardstick by which the jury's comparison of the negligences involved can be reversed. This is not a crossing accident. Defendant railroad company was receiving and discharging passengers at a place which required passengers and invitees to cross a track between the train and platform. It was within the province of the jury to conclude that the defendant's failure to take any effective means of guarding the place between the platform and the train where persons were invited to cross was a more serious default than plain-

were invited to cross was a more serious default than plaintiff's failure to make an adequate observation, and that the negligence of plaintiff was, in a measure induced by reliance on defendant to keep the place safe. The two types of negligence were wholly different in character, and I think that it would better accord with our previous decisions to leave the comparison to the jury.

I am authorized to state that Mr. Justice FAIRCHILD and Mr. Justice MARTIN concur in this dissent.

A motion for a rehearing was denied, with $25 costs, on December 3, 1940.