Kasper, Administrator, Respondent, vs. Kocher and others, Appellants: Kasper (individually) and another, Interpleaded Defendants.

*May 5—June 1, 1942.*

For the appellants there was a brief by *Wilkie, Toëbaas, Hart, Kraege & Jackman* of Madison, attorneys, and *Bloom-*

quist, *Watson & Lemke* of Milwaukee of counsel, and oral argument by *Oscar T. Toebaas.*

For the respondent there was a brief by *George A. Hartman* of Juneau, attorney, and *Regan & McCue* of Milwaukee of counsel, and oral argument by *John H. Regan.*

*Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* of counsel, all of Milwaukee, for the interpleaded defendants.

FRITZ, J. The defendants' principal contention on this appeal is that causal negligence on the part of Francis Kasper was greater than any negligence of the defendant Kocher; and in the latter respect defendants claim that the evidence does not admit finding that Kocher was causally negligent. In so far as necessary for the consideration of these matters, the evidence was to the following effect. At 2 p. m. on November 16, 1940, Kasper's car collided with a truck, which Kocher was driving westward on the north half of the twenty-three-feet-wide graveled roadway of County Trunk Highway S, at a point opposite the entrance to the highway from a private driveway to Kasper's farm buildings. Opposite the north line of that entrance, a town road entered the highway from the north at a right angle. Kocher's truck weighed five thousand pounds and was loaded with eight thousand pounds of gravel. In approaching on "S" from the east, he drove at twenty-five miles per hour and intended to continue westward beyond the driveway entrance. When about four hundred thirty-seven feet east thereof, he saw Kasper's car standing on his driveway, about one hundred thirty feet southeast from the entrance to "S." As Kocher continued at the same speed along "S," he saw Kasper's car moving on the driveway toward the entrance at twelve to fifteen miles per hour, and that it was slowing down, as Kocher's view thereof became obstructed by tall bushes which were along the east side of the driveway for fifteen feet south of the fence on the south line of "S." These bushes extended into "S" for nine feet, to

within five feet of the graveled roadway, and also to the east on the south side of "S" for about fifty-six feet.

The only eyewitnesses of the accident, who testified on the trial, were the plaintiff Kasper, the defendant Kocher, and a coemployee of his, Joseph Kuehn, who was driving eastward on "S" toward the driveway in another of their employer's trucks. Kasper testified that he could not remember anything that happened while he was approaching and proceeding to cross the highway, or that he was involved in the collision, but he admits that he intended to drive across "S" and continue north on the town road. Kuehn testified that from some distance west of the driveway he saw Kasper's car come out and enter the highway, and also saw Kocher's truck approaching, and that they were pretty close to each other; that Kasper's car did not come to a stop when he saw it and the last he saw it was "about half part" on the south side of the highway, but that because Kuehn went downhill shortly thereafter he did not see the collision. There is no evidence directly contradicting Kuehn's testimony, but plaintiff claims it is discredited by evidence that his car could not be seen in the driveway from the point where Kuehn was when he claims to have seen it. Kocher testified that as Kasper's car was approaching on the driveway it looked as if he was going to stop and was practically stopped as it got up toward the bushes which obstructed Kocher's view; that these bushes did hide the car for about a second and then Kocher saw it again right in front of him as the accident happened; that it came out all of a sudden and that he could not stop any more; that he was going upgrade when the car was back of the bushes and that when he got close to the intersection, right up to there, almost at the intersection he stepped on the gas when he was slowing down; that he did not apply his brakes or otherwise change his speed; and that he was driving on his right side of the road and did not change the course of the truck by turning to the left or right before the accident. The truck was about a

foot north of the center of the graveled roadway of "S" when the left front wheel and bumper thereof collided with the right front fender and wheel of Kasper's car. The damage to the truck affected the control thereof and it continued westward on "S" for one hundred thirty-eight feet. Kasper's car was turned westward and proceeded for forty-six feet in that direction, along the left side of the truck.

In view of the proof in relation to the above and other facts, which could reasonably be inferred therefrom by the jury in relation to the speed, and control and management of the vehicles as they were approaching the intersection, and the manner in which they did so, and the opportunity of each driver to observe the approach thereto, the jury could reasonably believe that, in the exercise of ordinary care and in time to have avoided a collision, Kocher ought to have observed by keeping a proper lookout that Kasper was not going to stop at the near limits of the roadway and to yield the right of way, that therefore Kocher should have changed the speed or course of the truck in his control and management thereof, and that, because of his failures in these respects, he was causally negligent; and that likewise Kasper ought to have observed that Kocher was approaching at such speed and in such manner that Kasper could not cross highway "S" in safety, unless there was compliance on his part with sec. 85.18 (8), Stats. (under which he was required to stop at the near limits of the roadway), and with sec. 85.18 (9), Stats. (under which he was required to yield the right of way to Kocher) ; and that because of his failures in these respects he was causally negligent. Consequently, it was within the jury's province to find as it did, in its special verdict, (1) that Kocher was causally negligent as to (a) lookout, (b) speed, and (c) control and management in operating the truck; and (2) that Kasper was causally negligent as to (a) lookout, (b) not yielding the right of way, and (c) not stopping prior to crossing the near limits of the roadway.

In connection therewith the jury found that sixty-five per cent of the total combined causal negligence of the parties was attributable to Kocher, and thirty-five per cent thereof was attributable to Kasper. In relation to these findings a review of the evidence compels the conclusion, however, in view of the quality and consequences of the causal negligence chargeable respectively to Kocher and to Kasper, that the causal negligence attributable to the latter was clearly greater than that of Kocher; and that, consequently, there cannot be sustained the jury's findings that sixty-five per cent of the combined total negligence was attributable to Kocher and but thirty-five per cent thereof was attributable to Kasper. In relation to lookout and the failure on the part of each in this respect and the causal consequences thereof, their negligence can be deemed about equal. However, Kasper's negligence and the causal consequences thereof in failing totally to comply with the requirements of sec. 85.18 (8), Stats., that "the operator of a vehicle emerging from an alley, private driveway . . . shall stop such vehicle . . . before crossing the near limits of the roadway," and also of sec. 85.18 (9), Stats., that "the operator of a vehicle entering a public highway from an alley . . . or private driveway shall yield the right of way to all vehicles approaching on such highway," were clearly greater than Kocher's negligence in respect to speed, and control and management. Such violations of subs. (8) and (9) of sec. 85.18, Stats., by drivers emerging suddenly from a private driveway onto a public highway, and particularly where the view of the car so emerging is obstructed, constitute some of the greatest dangers confronting the users of highways. In this case, as often under similar circumstances, there probably would have been no collision at all had Kasper observed the statutory duties to stop before crossing at the near limits of the roadway and to yield the right of way to the truck approaching thereon. As Kocher had the right

to assume that Kasper would perform these duties and also exercise ordinary care in all other essential respects, Kocher, in approaching with the truck entirely on the north half of the roadway of "S," was not obliged to reduce his speed, or stop, or alter his course until it ought to have become apparent to him that Kasper was not only going to fail to stop before crossing the near limits of the roadway, but was also going to fail to yield the right of way to Kocher to proceed along the north half of the roadway. That Kasper would fail in these respects, and particularly the latter, could not have become apparent to Kocher until, upon Kasper's car emerging from behind the bushes that extended to within five feet of the roadway, there was some indication because of which Kocher ought to have realized that there would be such failures on the part of Kasper. Then only can there be deemed to have become operative negligence on Kocher's part in respect to lookout, speed, or control and management. Consequently, the failures on Kasper's part in those respects were clearly the predominant causes of the collision, and it was attributable thereto to such greater extent than to the negligence on the part of Kocher, that the trial court should have so concluded, as a matter of law, and thereupon adjudged that by reason of such greater negligence on Kasper's part there can be no recovery herein of damages for any losses sustained personally by him. *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 262 N. W. 581; *Kilcoyne v. Trausch,* 222 Wis. 528, 269 N. W. 276; *Grasser v. Anderson,* 224 Wis. 654, 273 N. W. 63; *Peters v. Chicago, M., St. P. & P. R. Co.* 230 Wis. 299, 283 N. W. 803; *Hustad v. Evetts,* 230 Wis. 292, 282 N. W. 595; *Geyer v. Milwaukee E. R. & L. Co.* 230 Wis. 347, 284 N. W. 1; *Driesssen v. Moder,* 233 Wis. 416, 289 N. W. 689; *Patterson v. Chicago, St. P., M. & O. R. Co.* 236 Wis. 205, 294 N. W. 63; *Schmidt v. Milwaukee E. R. & T. Co.* 237 Wis. 220, 296 N. W. 609. It follows that, in so far as the

judgment provides for the recovery of damages for such losses, it must be reversed with directions to adjudge the denial thereof.

There remains, however, for consideration the right to recover judgment herein for the item of $100 assessed by the jury for pain and suffering sustained by Mabel Kasper, which her estate is entitled to recover from defendants in the event of causal negligence on the part of Kocher, regardless of whether there was greater causal negligence on the part of her husband. In relation to plaintiff's right to judgment on the verdict for the recovery of that item, there must be considered the contention of defendants that the court erred in instructing the jury on three occasions as follows :

1st, before the jury retired that—

"the *same ten jurors must agree to the answers given to each material and essential question* before the answer is written in."

2d, when the jury returned a verdict with the notations that jurors *Wenck* and *Gutgesell* dissented to finding Kocher negligent in respect to lookout, and that jurors *Wenck* and *McKinney* dissented to the other findings in respect to negligence on his part, the court instructed, in connection with sending the jury out for further deliberations, that—

"the *same ten jurors must agree to all of the material answers, to the answers to all of the material questions.* It is a very simple matter to see here that the same ten did not agree to the answers of that first question. Instead of two dissenters to these subdivisions you have three. *You must go back and either continue your deliberations until the same ten agree to your answers to all of the questions* or their subdivisions as I instructed you this morning."

And 3d, likewise to the same effect, when the jury again reported and the verdict disclosed a dissent by a fourth juror to an assessment of damages. Appellants claim that the italicized words in the instructions quoted above amounted to a coercion

that at least ten of the same jurors must get together and agree, otherwise their verdict could not be accepted by the court; and that therefore the instructions constituted prejudicial error. The contention must be sustained. In considering an instruction to the same effect in *Guth v. Fisher,* 213 Wis. 323, 330, 251 N. W. 223, we said,—

"The instruction with respect to the number necessary to be in agreement should relate to each question and not to the entire verdict. It is no concern of the jury whether or not the verdict will support a judgment in favor of either party. That is a matter for the court. If ten jurors cannot agree upon the answer to a question, then there is a disagreement of the jury; if the same ten cannot agree to all the answers necessary to support a judgment, judgment cannot be entered and there is a mistrial. While the jury may properly be instructed that it is their duty to endeavor to arrive at an agreement and that the same ten should concur in the answers made, they should not be instructed that no other course is permissible."

In that case the giving of the erroneous instruction was not considered reversible error because the verdict returned was unanimous. However, the facts in the case at bar, that the verdict was not unanimous and the erroneous instruction was given before the jurors entered upon their deliberations and repeated with the positive directions on two occasions when the jury was sent out to resume deliberations, compel the conclusion that the jurors probably were caused thereby to believe that no other course was permissible; and that therefore the instructions were coercive and the giving thereof must be considered prejudicial error, in the absence of proof clearly showing that no such undue influence was exerted thereby. *Mead v. Richland Center,* 237 Wis. 537, 541, 297 N. W. 419. Consequently, there must be a new trial for the determination of the issues involved to recover damages for the pain and suffering sustained by Mabel Kasper.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with the opinion.