ODGERS, Appellant, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Respondent.*

*March 6—April 8, 1952.*

* Motion for rehearing denied, with $25 costs, on June 3, 1952.

*Edwin Larkin* of Eau Claire, for the appellant.
*Reginald W. Nelson* of Milwaukee, for the respondent.

FRITZ, C. J.   On January 26, 1951, at 1 p. m. a truck owned and operated by the plaintiff, Harvey Odgers, collided on a highway-grade railroad crossing in Ladysmith, with defendant's locomotive No. 452, operated on its railroad tracks—which extended northwest and southeast—at an acute angle intersection with Highway 27—which ran north and south. The highway was twenty feet wide and at the intersection there was a main-line track and also a parallel passing-line track. There was no obstruction to the view along the highway and the tracks for a considerable distance north and south of the railroad crossing and plaintiff had often crossed and was very familiar with the entire physical situation at the crossing. As he drove south on the highway and came into the vicinity of the crossing, he saw it was blocked by a standing freight train (about thirty cars) which had just been made up and extended across the highway. Plaintiff testified he stopped directly opposite some rural mailboxes located one hundred forty-three feet north of the center of the crossing where the accident occurred, and that he remained there until the freight train started moving to the southeast and cleared the crossing. He claims that he looked to his right—or to the west—and started his truck in low gear and then looked to the southeast and glanced again to the west at a point which he estimated was halfway between the mailboxes and the crossing, and that he was driving at the rate of five or six miles per hour.

He testified he never looked or saw locomotive No. 452 approaching southward prior to colliding with it, although it was in plain sight before he started from his stopped position and at all times as he traveled southward the intervening one hundred forty-three feet to the crossing; that he did not hear any bell ringing,—but his truck windows were all closed,—and he did not claim he listened for a bell. He testified the bell may have been ringing, but he could not say one way or another. There is undisputed testimony that several northbound automobiles stopped south of the crossing on Highway 27 and did not move at any time prior to the collision; and plaintiff admitted that he saw those automobiles as he approached the crossing immediately prior to the accident, and that they were not moving although the crossing was not obstructed at that time.

Locomotive No. 452 had been used in making up the freight train and as the train continued moving southeastward its extreme end was followed by locomotive No. 452 at a distance of about ten car lengths behind the caboose; and when said locomotive reached a point six to eight feet northwest of a switch on the main-line track it stopped so that the switch could be turned by the switchman and lined up with the main-line track. The switchman then turned the switch and signaled to the fireman in the cab who told the engineer to proceed. The fireman, who was on the left or east side of the locomotive cab, testified that while it was stopped he saw the plaintiff's truck stopped on the highway north of the grade crossing. There was testimony, which apparently is uncontradicted, that the engineer then started the locomotive bell ringing by turning on the air valve which keeps the bell ringing until the valve is turned off, and started the engine toward the highway crossing; that as the locomotive moved past the switch, the switchman climbed on the moving locomotive, and the fireman then took readings of water and steam pressure gauges in the cab of the locomo-

tive. The train attained a speed of approximately eight miles per hour as it approached the crossing, and the bell was ringing continuously from the point where it was started at the switch, two hundred eighty-three feet northwest of the grade crossing where the accident occurred. The fireman saw plaintiff's truck when it was in front of the engine just before the impact. He shouted to the engineer who immediately shut off the power and threw on the emergency brake and then the collision occurred. The truck was pushed along in front of the engine until it stopped at the east edge of the highway. Plaintiff drove the truck away under its own power after members of the train crew pushed it to help it over the rails of the track.

The cab of plaintiff's truck had a windshield and glass windows on each side, and there was a small glass window in the rear of the cab, but the solid plywood of the stock rack came to within three and one-half inches of the window preventing a view out of the window and he could see no farther because the back frame of the window and the truck door blocked his vision; and he did not see the locomotive until after it hit the truck and he did not apply his brakes before the truck was struck.

Plaintiff testified he did not hear or listen for a bell ringing; and it is undisputed that the windows of his truck were closed so that a bell or whistle could not be heard. But the engineer, the fireman, and the switchman testified the engine bell was ringing as required, and a witness who lived in a house four hundred feet north of the railroad crossing testified she heard the bell ringing continuously and suspected that something was wrong. Consequently, as plaintiff himself admitted that the bell may have been ringing, his negative testimony in that respect does not raise any issue which requires determination by a jury. *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 262 N. W. 581; *Bellrichard v. Chicago & N. W. R. Co.* 247 Wis. 569, 20 N. W. (2d) 710;

*Shaffer v. Minneapolis, St. P. & S. S. M. R. Co.* 156 Wis. 485, 145 N. W. 1086.

Likewise as to plaintiff's lookout, there is no sufficient evidence to establish that there was any obstruction to his view of the approaching locomotive while it was one hundred forty-three feet away, or at any time thereafter up to the time of the collision; and his contention that he could not see farther along the tracks because the back frame of the right window of his truck and the rest of the truck door blocked his vision cannot be deemed to excuse his negligence in that respect. Instead of then simply leaning to his right so that he could get a more extended and open view of the tracks and the locomotive, he evidently erroneously assumed that there was no locomotive within such distance as would render his attempted crossing dangerous. As stated in *White v. Minneapolis, St. P. & S. S. M. R. Co.* 147 Wis. 141, 148, 133 N. W. 148:

"This absolute duty of a person to look and listen before attempting to cross a railway track, extends to vigilant attention in all directions from which a train, locomotive, or car may come, and includes obligation to see and hear such, if there be any, which such attention, in view of the danger, will enable him to. Therefore, for a person to declare he performed such duty and yet failed to perceive an approaching train or car, in case of there being such in plain sight or hearing, does not raise a question of fact for decision by a jury. Such person must be presumed to either not have performed such duty or to have done so and yet heedlessly submitted himself to the danger, . . ."

And as stated in *Hynek v. Kewaunee, G. B. & W. R. Co.* 251 Wis. 319, 322, 29 N. W. (2d) 45:

"The engine crew's duty to maintain a lookout is limited to the track and streets and highways adjacent to the track. The impossible is not required. This duty of the engine crew to maintain a proper lookout must be considered in the light of established legal principles recently reiterated in *Keegan*

*v. Chicago, M., St. P. & P. R. Co.* (1947), 251 Wis. 7, 27 N. W. (2d) 739. There the court held, as it has in other cases . . . that a motorist approaching a railroad crossing has a duty to look and listen for an approaching train before attempting to cross the tracks. The operators of a locomotive have the right to assume that the driver of an automobile traveling at a comparatively slow rate of speed toward a grade crossing will stop his car in a place of safety. In view of these principles of law and the facts of this case it is impossible to sustain the jury's finding of negligence on the part of the fireman."

*By the Court.*—Judgment affirmed.