GUTH, Respondent, vs. FISHER and another, Appellants.

*November 8—December 5, 1933.*

324

For the appellants there were briefs by *Bendinger & Hayes* of Milwaukee and *E. L. Kennedy* of Rhinelander, attorneys, and *Harry V. Meissner* of Milwaukee of counsel, and oral argument by *Mr. Meissner*.

For the respondent there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye*.

ROSENBERRY, C. J.   It is first urged that the court erred in denying defendants' motion for a directed verdict for the reason that plaintiff was guilty of negligence as a matter of law in regard to lookout.   This contention is based upon the fact that the plaintiff, who was proceeding southerly on highway 51, knew that he was being followed by a car; that nevertheless he swung somewhat to his left in order to make a turn into the driveway in question and made the turn without looking back to see where the car in his rear was.   The plaintiff was accompanied by his brother.   His

brother told him that there was a car in the rear. Plaintiff testified that when his brother told him a car was following, the car to the rear was 500 feet from the point of accident. The brother testified the car was from 150 to 250 feet from the point of accident. In support of his contention the defendant cites *Spice v. Kuxman,* 206 Wis. 293, 239 N. W. 497. *Spice v. Kuxman* has no application here for the reason that that case involved a situation where the plaintiff was turning to the left and across the line of oncoming vehicles.

This case is ruled by *Young v. Nunn, Bush & Weldon Shoe Co.* 212 Wis. 403, 249 N. W. 278. In the case at bar as in the *Young Case,* the parties were proceeding in the same direction. Here as there the driver of the vehicle made a right turn. The law governing the two cases is the same. The defendants seek to escape the effect of the holding in the *Young Case* by invoking the rule relating to lanes of traffic. As defined by sec. 85.10 (34), Stats., there were two lanes, one for north-bound traffic and one for south-bound traffic. The evidence tends to show that the left wheel of plaintiff's car was slightly over the center line of the highway, but he was not struck there. He was struck as he was leaving the lane for south-bound traffic and going to his right. The plaintiff in turning did not bring himself within defendant's line of travel. He was at all the times in question in defendant's line of travel and was struck when he was leaving it.

The court submitted to the jury upon proper instructions the question of whether or not the plaintiff was guilty of contributory negligence in doing what he did do. Under the evidence the question of contributory negligence was certainly for the jury.

It is next contended that the damages for injuries to the person as fixed by the court are excessive. As a result of the accident, plaintiff suffered severe injuries, abrasions and

bruises on the head, and spit blood for several days. At the time of the trial plaintiff was not entirely free from discomfort from the injuries. Plaintiff's main injury was to his back and kidney. That the kidney was injured appeared by the presence of blood in the urine as well as by tenderness in the region of the kidney. After the injury the plaintiff, who was a rural mail carrier, continued to make his route daily, which required him to drive his automobile for about three hours. He was unable to do anything that required him to stoop over. He testified that whenever he tried to do any work requiring stooping, he suffered sharp pains in the region of the kidney; that he had such depressing pain at other times and was unable to do the chores about his home and had to have the assistance of his relatives; that after his return from his trip he was obliged to lie down, and that on account of constant pain he has never experienced a good night's sleep since his injury. There was some evidence to the effect that an operation for fixation of the kidney would be necessary. The trial court, however, was of the view that the evidence would not sustain a finding that such an operation would be required, but that it was reasonably certain "that he would suffer pain and be obliged to be under treatment and be under physical disability for quite a long period."

The trial court had the benefit of observing the plaintiff during the course of the trial, heard all of the testimony, both lay and medical, with respect to the nature of the plaintiff's injuries, their extent and probable duration. It is considered that the finding of $2,500 damages is well supported by the evidence.

The defendant complains because the trial court, upon hearing the motion after verdict, found $2,000 to be the minimum and upon reconsideration fixed the minimum at $2,500. No reason appears why the trial court might not

review its determination in that respect as well as in any other. Upon appeal the only question which remains for consideration is whether the final determination finds support in the evidence.

The defendant complains in respect to the form of the questions in the special verdict as submitted by the court. The questions are as follows:

"First question. At the time of the collision on October 8, 1932, between the automobiles of the plaintiff and of Fisher, was the defendant Fisher, in his manner of operating his automobile, negligent in any of the following particulars: (a) . . . (b) in respect to his lookout and control of his automobile?

"Third question. At the time of said collision was plaintiff Guth in his manner of operating his automobile, negligent in any of the following particulars: (a) in respect to lookout and control of his automobile?"

Criticism of this question is based upon *Loizzo v. Conforti,* 207 Wis. 129, 240 N. W. 790. In that case the question was:

"Did the defendant, Frank Conforti, fail to exercise such care as the great mass of mankind ordinarily exercise under the same or similar circumstances—(a) In that he drove his car at a rate of speed greater than was reasonable and proper with due regard to the width, traffic, and use of the highway at the time and place in question?"

In that case it was said that the form of question suggested to the minds of the jury that the court was of the opinion that the defendant did drive his car at a rate of speed greater than was reasonable and that the only question for them to answer was, "Did he exercise ordinary care in so doing?"

We are unable to find anything in the first and third questions that suggests that the plaintiff was negligent or was not negligent, but the questions inquire as to whether

or not the plaintiff was negligent in the respects indicated. The language of the question in *Loizzo v. Conforti, supra,* was "In that he drove his car at a rate of speed greater," etc. Translating the question in the case at bar into the terms that are used in the *Loizzo v. Conforti Case* we would have:

"Was the defendant, Frank Conforti, in the manner of operating his automobile, negligent in any of the following particulars: (a) In that he failed to maintain a proper lookout and have proper control of his automobile?"

Upon comparing this form of question with the form of question that was submitted, it becomes apparent that the doctrine of *Loizzo v. Conforti* has no application here. Some criticism is made of the fact that lookout and control are submitted in one question. Under the facts of this case there was certainly nothing prejudicial in so submitting the case to the jury.

With respect to the five-sixths verdict, the court instructed the jury as follows:

"You should be unanimous in answering them, if you can be; but in case you cannot be unanimous upon all answers, you may return a verdict when ten or more jurors are in agreement upon all of the answers. It is not permitted that ten agree to one answer and a different ten agree to other answers. The same ten must be in agreement upon all of the answers made. You are to write the names of any jurors who disagree in the space left therefor at the end of the verdict."

The giving of this instruction is assigned as error.

The instruction is no doubt subject to criticism. It is equivalent to instructing the jury that they may not disagree. The instruction with respect to the number necessary to be in agreement should relate to each question and not to the entire verdict. It is no concern of the jury whether or not the verdict will support a judgment in favor of either

party. That is a matter for the court. If ten jurors cannot agree upon the answer to a question, then there is a disagreement of the jury; if the same ten cannot agree to all the answers necessary to support a judgment, judgment cannot be entered and there is a mistrial. While the jury may properly be instructed that it is their duty to endeavor to arrive at an agreement and that the same ten should concur in the answers made, they should not be instructed that no other course is permissible. In this case the verdict was unanimous. The error, if any, was clearly not prejudicial.

*By the Court.*—Judgment affirmed.