Johnston and wife, Plaintiffs and Respondents, vs. Esch-
rich and another, Defendants and Appellants: Allied
American Mutual Fire Insurance Company, Im-
pleaded Defendant and Respondent.

*February 2—March 3, 1953.*

For the respondents there was a brief and oral argument by *Herbert L. Mount* of Milwaukee.

For the impleaded respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb, Edmund W. Powell,* and *Kurt H. Frauen* of counsel, all of Milwaukee, and oral argument by *Mr. Frauen.*

BROWN, J.   The first question concerns the respective causal negligences of Dr. Johnston and Tretow, driver for defendant Eschrich, whose negligence in the course of his employment is imputed to his employer.   Defendant submits that since Johnston saw Eschrich's truck in time to stop before hitting it, the absence of taillights or reflectors was not a cause of the collision.   We are unable to concur, because of the peculiar circumstances presented by the load which the truck was carrying.   Ordinarily, when a driver observes an obstacle in the road, due care requires him to stop before reaching it if clear passage to go by it is not available.   But here (as the plaintiff driver testified, and it is not inherently incredible) the load in the truck gave it the appearance of a clump of bushes, which often grow at the edge of the road and seldom or never in the roadway itself.   A taillight on the truck would have dispelled the illusion by showing the presence of a motor vehicle but its absence confirmed the mistaken impression that there was actually a roadside thicket with a highway of full width to its left for plaintiffs' use. Believing, then, that the obstruction was at the side of the road, not in it, the plaintiff did not try to stop before coming up to it nor until the oncoming automobile prevented pass-

ing, when it was too late for stopping. Under such circumstances the jury might well find that the absence of visible taillights or reflectors on the truck were proximate causes of the accident. On the other hand, the jury might find that an automobile coming from the other direction indicated the location of the road and as the truck at first appeared to be in plaintiff's path, due care required him to approach with considerably more caution than he displayed. We conclude that a jury question was presented and we would not disturb the answers concerning the causal negligence of the respective drivers if we were able to approve the questions put to the jury on that subject.

Both plaintiffs testified that they saw no lights on the truck as they overtook it. The truck ran off the road and into a field after the collision and other witnesses who saw it afterwards testified that then the shrubbery which composed its load obscured the taillight from the rear. Tretow testified that he feared the shrubbery might obscure the light and he had examined the load some eight miles back and had ascertained that the light was visible. A question to be determined by the jury was whether or not, just before the accident, the truck carried a taillight which would be visible to the driver of an overtaking car at a distance of 500 feet. (See sec. 85.06 (5), Stats.) The absence or invisibility of such a light, being a violation of a safety statute, would be negligence as a matter of law. The jury, therefore, need be asked only if the truck showed a red light of the required visibility and, if not, whether such lack was a cause of the collision. The learned trial court, however, asked this question:

"Was the defendant, William Eschrich, negligent at the time and place and under the circumstances existing at and just prior to the time of the accident with respect to:

"(a) Transporting the load on his truck in such a manner so as to obscure the taillight?"

At the very best, the question is confusing, apparently asking the jury to decide whether it was negligence for the defendant to transport a load in such a manner as to obscure the taillight, a question to which the statute gives an affirmative answer. The question should be framed so that the jury may say whether the required light was present and visible and the question of negligence would then take care of itself. There is no room in the question submitted for the jury to answer that the taillight was visible before the collision, if they believed that to be the fact, although that is an issue to be determined. We consider that the question submitted is so subject to misinterpretation by the jury that a new trial must be had in which the respective causal negligences of the parties may be determined by answers to questions properly framed.

On a new trial the evidence may differ from that in the record before us. However, we take the liberty of saying that the issue of assumption of risk by Mrs. Johnston has given us trouble. She did, of course, take her driver as she found him when she commenced her journey with him and she assumed the risk incident to unfavorable weather. The jury found that Dr. Johnston increased the risk, and it found that *at and just before the collision* he failed to exercise the skill and judgment he possessed in respect to management and control of his automobile, the risk of which it found Mrs. Johnston also assumed. It is difficult to discover a basis for the latter finding. As a matter of law Mrs. Johnston assumed the risk of her husband's deficiencies in skill and judgment when she consented to ride with him but at that time she did not assume the increased risk of his failure to act in accordance with his capabilities. The jury found that he failed to manage and control the car even as well as he could immediately before and at the time of the accident. While that is a risk not assumed by the guest as a matter of law, it may be assumed as a matter of fact, as the jury

found it was; but such assumption requires that the guest have some choice in the matter and some reason to anticipate that the host will not live up to his own capacity for skill and judgment. In our view the record does not present questions for the jury on this point. There is here no evidence of any lack of care on Dr. Johnston's part at any time until the last moments before the collision. His conduct did not put Mrs. Johnston on notice that he was not at his best and require her to abandon the journey or take the added risk of continuing under conditions of the driver's unexpectedly deficient skill or judgment. The finding confines itself to the instant before the impact and it is quite obvious that then and thereafter Mrs. Johnston had no opportunity either to assume risk or divest herself of it. If the trial of the action had reached this point without error we would have been impelled to state that Mrs. Johnston had assumed the risks of driving under the difficult conditions which were attributable to the weather but that there was no evidence to support a finding that, in the last moments before the crash, she assumed any increased risk arising from her husband's failure to exercise the skill and judgment in management and control of which he was capable.

Appellants criticize the trial court's instruction to the jury that:

"The law provides that a verdict in a civil case, such as this is, agreed to by five sixths or more of the jury, shall be the verdict of the jury. Each answer made by the jury shall be agreed to by at least ten jurors, and you are instructed the same five sixths of the jurors must agree to each answer."

". . . You are instructed to bear in mind that if the questions of the special verdict are not answered unanimously, then the same ten jurors must agree to each question."

It is submitted that the instruction is coercive and prejudicial. Certainly, the language used is peremptory and cannot be approved. *Kasper v. Kocher* (1942), 240 Wis. 629, 636,

4 N. W. (2d) 158. Since we reverse on other grounds we need not determine whether under the circumstances of this case the instruction amounted to prejudicial error, but such a charge should be avoided on retrial.

We see no reason why a new trial need be had on questions of damage but believe one to be necessary on the issues of causal negligence and assumption of risk, and we so direct.

*By the Court.*—Judgment reversed and cause remanded for further proceedings conforming to the opinion.