BOHLMAN, Respondent, v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY and another, Appellants.*

*No. 154.   Submitted November 27, 1973.—Decided January 21, 1974.*
(Also reported in 214 N. W. 2d 52.)

[7] *See* 3A Corbin, *Contracts*, p. 274, sec. 693, for remedies of the contractor when the owner breaches a construction contract.

* Motion for rehearing denied, with costs, on April 2, 1974.

For the appellant the cause was submitted on the brief of *Genrich, Terwilliger, Wakeen, Piehler & Conway*, attorneys, and *Roger Rouse* and *Douglas J. Klingberg* of counsel, all of Wausau.

For the respondent the cause was submitted on the brief of *Kersten & McKinnon* of Milwaukee, and *Rex M. Smith* of Antigo, attorneys, and *Arlo McKinnon* of counsel.

HALLOWS, C. J.   There are, as in many automobile accident cases, two divergent theories of how the accident happened.  The accident occurred on South Superior Street, the main traffic artery through Antigo, at 3:30 in the afternoon of October 10, 1964.  The weather was clear and the road was dry, straight and level.  South Superior Street is also State Highway 45 and runs north and south and is divided by a single-painted stripe down the center, separating the northbound traffic from the southbound traffic.  The street is approximately 44 feet wide with room for two lanes of traffic to proceed in the

same direction on either side of the center stripe but there are no lane designations other than the painted stripe down the center of the highway.

After Schumacher finished shopping at a food market on the west side of South Superior Street, he exited from the market's parking lot and turned left on to South Superior Street, heading north. Some 300 feet north of the market he turned his auto in a northeasterly direction in the process of making a right turn to enter the driveway of another market on the east side of South Superior Street. As he was making this turn, his automobile was struck on the right-rear bumper by the motorcycle driven by Bohlman, who had been proceeding north on South Superior Street. Bohlman was thrown from the motorcycle over the trunk of the automobile, and landed approximately eight feet north of the auto. He sustained serious leg injuries.

According to Schumacher's version of the accident, after he turned north onto South Superior Street, he proceeded at a speed of some 20 to 25 miles per hour with the left-side wheels of his automobile positioned three to four feet east of the painted-center stripe. This would place his automobile in the inner area or lane of the east half of South Superior Street. Before turning from this area, he applied his brakes, put on his turn signals to indicate his intention to make a right turn, checked his rearview mirror, and saw nothing. He testified he did not see the motorcycle or hear any horn sounding and that he was not struck until his front wheels were up on the sidewalk and his rear wheels were climbing the driveway incline from the street. On this theory, the accident was a mine-run, rear-end collision caused by Bohlman following Schumacher at too close a distance and failing to sound his horn.

Bohlman's story is substantially different. He claims the accident occurred because Schumacher attempted to

make a right turn in front of him from the left lane without any warning when it was not safe for Schumacher to do so. Bohlman testified he was operating his motorcycle approximately 25 miles per hour in the outer area of the northbound South Superior Street, which would place him in the lane next to the curb. His speed was consistent with that of Schumacher who was in the inner area, some 45 to 55 feet ahead and to the left of him, when suddenly and without warning, Schumacher started to make a right turn in front of him from the inner area. Having been cut off by this maneuver, Bohlman then swung left in an attempt to avoid hitting Schumacher's vehicle but was unsuccessful. Bohlman testified the right side of his motorcycle struck the right-rear bumper of the automobile and wedged his leg between the motorcycle and the auto. Bohlman placed the accident in the roadway, not on the driveway incline and testified that at the point of impact the left-rear corner of Schumacher's automobile was some six or seven feet east of the painted center line, which area was still part of the inner area of the northbound double lane. There were three witnesses to the accident besides the four family-member passengers in the Schumacher car. The three witnesses in general supported Bohlman's theory of the accident and the four family members testified for Schumacher.

Schumacher and American Family raise a question in respect to instructions on the apportionment of negligence, request a new trial in the interest of justice, and claim the damages awarded plaintiff were excessive. In respect to the instructions, defendants argue that there was prejudicial error because of the failure of the trial court to give the instructions requested and that the instructions the court did give were repetitious and unduly emphasized Bohlman's theory of the case.

Defendants made a written request that the trial court instruct the jury *inter alia* on plaintiff's duty with respect to operation of a car following another, Wis J I—Civil, Part I, 1112; nonstatutory duty to sound horn, Wis J I—Civil, 1096; and lookout, Wis J I—Civil, 1055. These requested instructions were selected as a means to get the defendant's theory of the case as a mine-run rear-end collision before the jury, but defendant's counsel thereafter assisted the trial court in chambers in the preparation of a set of the instructions to be given the jury and made no objection at that time or thereafter to the instructions which were given or the failure to give his requested instructions. The instructions given did not include an instruction on the plaintiff's duty respecting the sounding of his horn or following another vehicle and the instruction given respecting the plaintiff's duty of lookout differed somewhat from the standard instruction on lookout.

Following the instruction of the jury and the return of the verdict, defendants moved the trial court for a new trial, among other things, and raised the issue concerning the jury instructions. When defendants' counsel participates along with plaintiff's counsel in chambers with the trial judge in drafting instructions to be given to the jury, such participation without objection to the omission of his proposed instructions from the final draft and a modification in the final draft of one of his proposed instructions constitutes his concurrence in the instructions as the trial judge proposed to give them. By failing to note an objection or to evidence disagreement with the instructions which the trial judge had prepared, defendants' counsel impliedly consented to the instructions given and consequently waived any objection which might have been taken assuming a breach of the requirement or the duty of the trial judge to give the requested instructions. While it is the practice for trial

counsel to help a trial judge with instructions and perhaps agree to them, trial counsel, if he desires to cooperate with the trial judge and does not want to waive his own instructions, should state his reservation on the record so that his exceptions and his instructions may serve as a foundation for appeal; otherwise, participation in the preparation of or agreement with the instructions given by the trial court, even if such agreement is requested by the trial court, constitutes a waiver of the giving of the instructions requested and of any error in the instructions given so that such alleged errors may not be raised on appeal as a matter of right. This procedure will expedite a trial without creating situations embarrassing to trial counsel or a waiver of objections concerning instructions.

Appellants argue that when a party claims error because of the failure to give instructions, he need only show that a timely request for appropriate instructions was made and that a motion for a new trial, bottomed on such error, was made, citing *Carson v. Pape* (1961), 15 Wis. 2d 300, 112 N. W. 2d 693, and *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380. Because both these steps were taken in the instant case, appellants maintain they are entitled to raise the issue relating to the instructions as a matter of right; we think not. In *Savina v. Wisconsin Gas Co.* (1967), 36 Wis. 2d 694, 154 N. W. 2d 237, plaintiff complained on appeal about the form of a verdict question and certain instructions. The court held plaintiff could not raise these issues as a matter of right.

"These issues cannot be raised as a matter of right as there was no timely objection either to the form of the verdict or to the insufficiency of the instruction and no additional instruction was requested of the court. An objection to the form of a verdict must be made promptly. If counsel knows the form of the verdict prior to the verdict's submission to the jury, he should then object;

if no such opportunity is afforded counsel, objection to the form of the verdict should be made before the jury returns its verdict. A party cannot take his chance with the jury and object only if he loses. *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 34 N. W. 2d 116; *Johnson v. Sipe* (1953), 263 Wis. 191, 56 N. W. 2d 852; *Martin v. Outboard Marine Corp.* (1962), 15 Wis. 2d 452, 113 N. W. 2d 135. The objection here is not to the validity of the verdict as was the case in *Vroman v. Kempke* (1967), 34 Wis. 2d 680, 150 N. W. 2d 423, where the verdict was void and did not constitute a verdict and thus could not stand whether objected to or not.

"An objection to the instructions for inadequacy or insufficiency must also be made at least prior to the return of the verdict. Generally, counsel should timely submit his requested instructions, but if this is not done and the instructions given are not erroneous as a misstatement of the law but are incomplete, it is the duty of counsel to object at the time the instruction is given. *Carson v. Pape* (1961), 15 Wis. 2d 300, 112 N. W. 2d 693; *Grinley v. Eau Galle* (1956), 274 Wis. 177, 79 N. W. 2d 797. Absent proper objections by the plaintiff, these alleged errors in the verdict and the instructions are not before us." *Savina v. Wisconsin Gas Co., supra,* 701, 702.

*See also*: *Menge v. State Farm Mut. Automobile Ins. Co.* (1969), 41 Wis. 2d 578, 164 N. W. 2d 495. On the facts of this case, the defendants-appellants cannot raise the question of the trial court's failure to give the requested instructions or object that the instructions given were erroneous or overemphasized the plaintiff's theory of the case.

The appellants also complain that the five-sixths verdict instruction given by the court was inaccurate and prejudicial because coercive. The language of the instruction was similar to that specifically disapproved in *Guth v. Fisher* (1933), 213 Wis. 323, 251 N. W. 223; *Kasper v. Kocher* (1942), 240 Wis. 629, 4 N. W. 2d 158; *Perkie v. Caroline Ins. Co.* (1942), 241 Wis. 378, 6 N. W. 2d 195; and *Johnston v. Eschrich* (1953), 263 Wis. 254,

57 N. W. 2d 396. While the language of this instruction is improper under these cases, the defendants cannot show prejudice because the verdict in the instant case was unanimous; and in *Guth v. Fisher, supra,* we held that where the verdict is unanimous, the erroneous instruction is not prejudicial. In determining the effect of an instruction on the validity of a verdict, the well-established principle is that a single instruction to a jury may not be judged in isolation but must be viewed in the context of the overall charge. *Boyd v. United States* (1926), 271 U. S. 104, 46 Sup. Ct. 442, 70 L. Ed. 857; *Menge v. State Farm Mut. Ins. Co., supra; Willenkamp v. Keeshin Transport System, Inc.* (1964), 23 Wis. 2d 523, 127 N. W. 2d 804; *Kuklinski v. Dibelius* (1954), 267 Wis. 378, 66 N. W. 2d 169. This principle recognizes that a verdict is usually the culmination of a trial, which includes testimony of witnesses, argument of counsel, exhibits, and other instructions by the judge. In *Lisowski v. Milwaukee Automobile Mut. Ins. Co.* (1962), 17 Wis. 2d 499, 117 N. W. 2d 666, this court stated, at pages 503, 504:

"A judgment will not be reversed on the ground of misdirection of a jury unless this court is of the opinion after an examination of the entire record that the error has affected the substantial right of the party seeking the reversal. Sec. 274.37, Stats. This is a test of probability, not possibility, requiring the entire evidence to show that had not the error occurred the result would probably have been different [citing cases]. It does not appear from the record that had the instruction not been given a different result would or could have followed."

The trial court did not commit error in refusing to find Bohlman as a matter of law at least as negligent as Schumacher. Appellants' argument is based on the theory the jury in finding Schumacher 85 percent causally negligent had to find him negligent in all respects submitted, *i.e.,* position on the roadway when he

made the right turn, failure to signal a right turn, and failure to maintain a proper lookout prior to deviating from the lane of travel. Appellants maintain the evidence does not support such findings, arguing that: (1) Schumacher could not have been negligent with respect to position on the roadway in negotiating a right turn because Bohlman was following him in the same or substantially the same lane; (2) although the jury might have found that Schumacher failed to give a turn signal before beginning a right turn, the trial court was obliged to conclude he did apply his brakes and that his brake lights thus furnished the necessary warning of his intention to turn right, thereby negating his negligence with respect to turn signals; (3) even if the jury found Schumacher was negligent with respect to lookout before deviating from a lane of travel, this negligence could not have been causal of the accident because the accident occurred in the very lane from which Schumacher is supposed to have deviated; and (4) Bohlman's negligence in lookout, management and control and following too closely equalled or exceeded Schumacher's negligence.

However, the jury chose to believe Bohlman's theory of the accident, which it had a right to do, and we conclude from a review of the evidence that there is sufficient credible evidence which under a reasonable view in a light favorable to the verdict, supports the verdict and therefore we should not disturb it. *Rodenbeck v. American Mut. Liability Ins. Co.* (1971), 52 Wis. 2d 682, 190 N. W. 2d 917; *Lautenschlager v. Hamburg* (1969), 41 Wis. 2d 623, 165 N. W. 2d 129; *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 151 N. W. 2d 706; *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 139 N. W. 2d 48; *Schwalbach v. Antigo Electric & Gas, Inc.* (1965), 27 Wis. 2d 651, 135 N. W. 2d 263.

In some cases when, as a matter of law, this court can find a person's negligence exceeds that of another

contrary to the apportionment of the jury, it has upset the jury's apportionment. *Lautenschlager v. Hamburg, supra; Ernst v. Greenwald, supra; Firkus v. Rombalski* (1964), 25 Wis. 2d 352, 130 N. W. 2d 835; *Gross v. Denow,* ante, p. 40, 212 N. W. 2d 2. This rule is no longer restricted to instances in which the negligence of both parties is of the same kind and character, although that was once stated to be the rule in *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. 2d 3, 52 N. W. 2d 134 and *McGuiggan v. Hiller Brothers* (1932), 209 Wis. 402, 245 N. W. 97. While superficially, negligence of the same kind and character may seem to carry equality of the contribution of causation, contribution in fact does not depend upon the kind, nature, or character of negligence so as to command any particular percentage of the apportionment of causal negligence. Factually, a determination must be made in each case of the contribution of negligence, whether the negligence is similar in nature or different, or whether the negligence is in one respect or in many respects are all factors but not controlling. There is no artificial formula for apportioning negligence.

Appellants argue that a new trial should be granted in the interest of justice because even if the negligence of Bohlman was not more than 50 percent, the apportionment of only 15 percent to Bohlman was so contrary to the great weight and clear preponderance of the evidence as to be grossly disproportionate. This court has on some occasions granted a new trial when the apportionment of negligence was grossly disproportionate. *Lautenschlager v. Hamburg, supra,* 627, 628; *Loomans v. Milwaukee Mut. Ins. Co.* (1968), 38 Wis. 2d 656, 158 N. W. 2d 318; *Bishop v. Johnson* (1967), 36 Wis. 2d 64, 152 N. W. 2d 887; *Lawver v. Park Falls* (1967), 35 Wis. 2d 308, 151 N. W. 2d 68; *Gauthier v. Carbonneau* (1938), 226 Wis. 527, 277 N. W. 135; *Zenner v. Chicago, St. P., M., & O. Ry. Co.* (1935), 219 Wis. 124, 262 N. W. 581.

Since this court has not adopted the *Powers* [1] rule in application to the apportionment of negligence,[2] the only remedy to correct such apportionment is to grant a new trial in the interest of justice under sec. 251.09, Stats.[3] To apply this principle, the court must be convinced there has been a probable miscarriage of justice in viewing the case as a whole. *Savina v. Wisconsin Gas Co., supra; Lock v. State* (1966), 31 Wis. 2d 110, 118, 142 N. W. 2d 183, and that the new trial would probably effect a different result. *Lorenz v. Wolff* (1970), 45 Wis. 2d 407, 173 N. W. 2d 129. Appellants argue the real issue in this case, its theory of the case as a mine-run rear-end collision, has not been tried. But the issue as defined at trial was tried and before the jury; and the court must conclude that neither this argument nor the apportionment of negligence are grounds for a new trial to be granted in the interest of justice.

[1] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

[2] This proposed application of the *Powers* rule was first advocated in *Lawver v. Park Falls* (1967), 35 Wis. 2d 308, 314, 151 N. W. 2d 68, in the concurring opinion and since then in *Pruss v. Strube* (1968), 37 Wis. 2d 539, 546, 155 N. W. 2d 650; *Vincent v. Pabst Brewing Co.* (1970), 47 Wis. 2d 120, 139, 177 N. W. 2d 513 (dissenting opinion); *Bourassa v. Gateway Erectors, Inc.* (1972), 54 Wis. 2d 176, 181, n. 1, 194 N. W. 2d 602; and *Gross v. Denow, supra,* at 54.

[3] "251.09 **Discretionary reversal.** In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

Lastly, appellants argue the damages are excessive. Special damages were determined by the court upon stipulation. The thrust of this argument is that $30,200 is excessive for Bohlman's personal injuries. At the time of the accident, Bohlman was a healthy, young husband, supporting himself and wife and seven children by his work as a truck driver. At the time of trial he was forty-four years old with a long life expectancy. Bohlman received compound comminuted fractures of the right tibia and fibula. There was also a fracture of the inferior pole of the right patella, together with abrasions of the right hand and right knee. Surgical procedures involved the removal of the lower pole of the right patella, together with an open reduction and internal fixation with an intramedullary nail of the right tibia. In addition, it was necessary that the patella tendon be sutured to the remaining portion of the patella.

Bohlman was in the hospital, the first time, for approximately one month. He was readmitted for treatment of an ulcer which developed to the rear of his leg. He has a scar three inches long on the right patella, a half-moon scar six and one-fourth inches long on the right anterior tibia. He has a slight limp without a shoe. He has a scar three inches wide and two and one-half inches long to the back of the knee. Bohlman has sustained 10 percent loss of the backward bending of the foot, 10 percent loss of the flexion of the knee. There is a hypertrophic development at the right patella, the inferior pole, which causes rubbing in the knee joint which is associated with pain.

There is evidence the bones of the lower leg are permanently displaced and there is a residual permanent bowing of the large bone. The bones healed in this misalignment which is permanent. The misalignment has tilted the angulation of the leg bones with the ankle joint, resulting in a shortening of the Achilles tendon, a

flattening of the right foot and traumatic arthritis of the ankle joint. Bohlman has returned to work but his right leg and ankle become painful and swollen and the traumatic arthritis will become progressively worse with disability and resulting from pain.

The trial court found the amount awarded by the jury was not excessive. After a review of the record, we conclude the trial court was not in error in sustaining the award of damages.

*By the Court.*—Judgment affirmed.