**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hild v. Samaritan Health Partners*, Slip Opinion No. 2024-Ohio-3338.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-3338

HILD, ADMR. OF THE ESTATE OF BOLDMAN, APPELLEE, *v.* SAMARITAN HEALTH PARTNERS ET AL., APPELLANTS; ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hild v. Samaritan Health Partners*, Slip Opinion No. 2024-Ohio-3338.]**

*Civil law—Negligence—Same-juror rule applies in all negligence cases in which jury answers sequential interrogatories that separate the elements of negligence to reach a general verdict—The same three-fourths of jurors must concur on all elements of negligence for a verdict finding a defendant liable for negligence to be valid—Court of appeals' judgment affirmed in part and reversed in part.*

(No. 2023-1076—Submitted April 9, 2024—Decided September 5, 2024.)

APPEAL from the Court of Appeals for Montgomery County,

No. 29652, 2023-Ohio-2408.

_____

KENNEDY, C.J., authored the opinion of the court, which FISCHER, DEWINE, DONNELLY, and DETERS, JJ., joined. BRUNNER, J., dissented, with an opinion joined by STEWART, J.

**KENNEDY, C.J.**

{¶ 1} In this discretionary appeal from a judgment of the Second District Court of Appeals, we consider whether the "same-juror rule" or the "any-juror rule" applies in negligence cases. Specifically, we address whether only the jurors who find negligence, i.e., the jurors who find that the defendant had a duty and that the defendant breached that duty, may vote on the issue of proximate cause. We hold that the same-juror rule applies in all negligence cases in which the jury answers sequential interrogatories that separate the elements of negligence to reach a general verdict. Consequently, the same three-fourths of the jurors must concur on all elements for a verdict finding a defendant liable for negligence to be valid. We therefore reverse the judgment of the Second District to the extent that it reversed the trial court's denial of the plaintiff-appellee's motion for a new trial, and we reinstate the jury verdict in favor of defendants-appellants.

## I. Facts and Procedural Background

{¶ 2} This action arose from medical treatment that was rendered to decedent, Scott Boldman. As the administrator of Boldman's estate, Janet Hild, appellee, brought an action for medical negligence, wrongful death, and survivorship on behalf of the estate. Hild filed the action against several medical professionals and entities, including appellants, Samaritan Health Partners; Good Samaritan Hospital; Premier Health Partners; Vincent M. Phillips, M.D.; Certified Registered Nurse Anesthetist ("CRNA") Sandra Ward; and Consolidated Anesthesiologists, Inc. (collectively, "the hospital").

{¶ 3} Boldman suffered from several ailments, including morbid obesity, Type I diabetes, sleep apnea, hypertension, lymphedema in both lower extremities, and cellulitis. He also smoked a pack of cigarettes a day.

{¶ 4} On Christmas Eve 2017, Boldman went to Good Samaritan North Health Center with complaints of stomach pain. Boldman was transferred to Good Samaritan Hospital and was scheduled for an emergency appendectomy. Boldman's anesthesia for the operation was administered by Ward under the supervision of an anesthesiologist, Dr. Phillips.

{¶ 5} After surgery, Boldman emerged from anesthesia and became combative. The parties dispute the cause of Boldman's emergence from anesthesia, his combativeness, and his death. Hild claims that the anesthesia was improperly handled by Ward and that that is why Boldman became aggressive and removed his own breathing tube and that the removal of the tube led to his eventual death. The hospital claims that Boldman experienced postoperative aggression and that he self-extubated and was breathing well on his own. According to the hospital, Boldman then suffered a cardiac arrest resulting in an anoxic brain injury.

{¶ 6} The case proceeded to a jury trial. During the jury-instruction portion of the trial, the jury was given several interrogatories to facilitate its decision-making. Each interrogatory was followed by instructions. Interrogatory A asked, "Do you find, by the greater weight of the evidence, that the Defendant, Sandra Ward, CRNA, was negligent in her care and treatment of Scott Boldman? (At least six jurors must agree on the answer.)" The instructions following Interrogatory A stated: "[I]f the answer of six or more jurors to Interrogatory A is 'Yes,' move to Interrogatory B. Only those jurors who answered Yes to Interrogatory A are qualified to participate in answering Interrogatory B."[1]

---

1. Interrogatory B is not at issue in this case. It asked the jurors to describe in what way Ward had been negligent.

{¶ 7} After Interrogatory B were these instructions: "After answering Interrogatory B, please proceed to Interrogatory C. Only those jurors who answered 'Yes' to Interrogatory A are qualified to participate in answering Interrogatory C." Interrogatory C asked, "Do you find, by the greater weight of the evidence, that the negligence of the Defendant, Sandra Ward, CRNA, directly and proximately caused the injury and death of Scott Boldman? (At least six jurors must agree on the answer.)"

{¶ 8} While the trial court was reading the jury instructions and interrogatories to the jurors, Hild's counsel interrupted and requested a sidebar. Much of what was said during the sidebar is reported in the transcript as "indiscernible," but the transcript seems to show that Hild's counsel believed there was an issue with the instructions following Interrogatory A. The trial court noted the objection and proceeded with reading the interrogatories.

{¶ 9} After the jury retired to deliberate, Hild's counsel again raised a concern with the trial court about the interrogatory instructions. Hild's counsel asserted that it was incorrect to instruct that only the jurors who vote yes on Interrogatory A may decide Interrogatory C. He advocated that all jurors be able to answer all interrogatories. He explained, "[A]mazingly enough even though they may not have found someone negligent they could still participate in the discussion on causation . . . . [S]omeone could not agree with the negligence interrogatory, but they might be agreeing to the rest." Despite his concern, Hild's counsel said, "I don't know that it's a big deal . . . ." The trial-court judge was not persuaded to change the interrogatory instructions.

{¶ 10} The jury returned a verdict in favor of the hospital. Regarding Interrogatory A, six of the eight jurors found that Ward was negligent in her care and treatment of Boldman. In accordance with the jury instructions, only the six jurors who found Ward negligent proceeded to vote on the issue of proximate cause

(Interrogatory C). On the issue of proximate cause, the jury determined that Ward's negligence did not directly and proximately cause Boldman's injury and death.

{¶ 11} Hild filed a motion for a new trial. Hild claimed that she was deprived of an absolute right to have a full jury deliberate and vote on the elements of her claim. She argued that the interrogatory instructions were erroneous because they employed the same-juror rule, which precluded the two jurors who did not find negligence from voting on the issue of proximate cause. The trial court denied Hild's motion for a new trial.

{¶ 12} Hild appealed the entry denying her motion for a new trial to the Second District. On appeal, Hild set forth three assignments of error that collectively asserted that the trial court erred in denying her motion for a new trial because it was incorrect to include the same-juror rule in the jury instructions.

{¶ 13} The Second District agreed and held that Hild suffered prejudice when the trial court allowed the same-juror rule to apply to the interrogatories. 2023-Ohio-2408, ¶ 87 (2d Dist.). According to the Second District, "[t]he fault was in prohibiting the full jury from considering both negligence and proximate cause, and that deprivation was not harmless because it involved the right to have a full jury deliberate the case." *Id.* The Second District affirmed in part and reversed in part the trial court's ruling on Hild's motion for a new trial. It affirmed the denial as to the jury's finding Ward negligent, and it reversed the ruling in all other respects and remanded the case for a new trial on the following issues: "(1) whether Ward's negligence directly and proximately caused Boldman's injury and death; (2) whether Ward was under the direction and control of Dr. Phillips; (3) whether Good Samaritan was responsible under the doctrine of agency by estoppel; and (4) the total amount of compensatory damages, if any, that were caused due to Ward's negligence." *Id.* at ¶ 94.

{¶ 14} The hospital appealed to this court. We accepted three propositions of law for review from Good Samaritan Hospital, Samaritan Health Partners, and

Premier Health Partners and a fourth proposition of law for review from Consolidated Anesthesiologists, Dr. Phillips, and Ward:

(1) The same juror rule, as established in *O'Connell v. Chesapeake* [*& Ohio RR. Co.*, 58 Ohio St.3d 226 (1991),] logically applies to the issues of negligence and proximate causation in cases of alleged medical negligence.

(2) Courts must instruct the jury to follow the same juror rule when deliberating on the elements of negligence to avoid offending the Ohio Constitution.

(3) A party must establish prejudice to warrant reversal.

[(4)] Logic requires that the 'same juror' rule applies to negligence and proximate cause in actions based on negligence, including medical malpractice cases.

*See* 2023-Ohio-3952.

{¶ 15} We consider the first and fourth propositions contemporaneously. We need not address the second or third proposition to resolve this case. We hold that the same-juror rule applies in all negligence cases in which the jury answers sequential interrogatories that separate the elements of negligence to reach a general verdict. We therefore reverse the judgment of the Second District to the extent that it reversed the trial court's ruling, and we reinstate the jury verdict.

## II. Law and Analysis

### A. Standard of Review

{¶ 16} "De novo review is appropriate 'where a trial court's order is based on an erroneous standard or a misconstruction of the law . . . . In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court . . . .' " (Ellipses in original.) *State v. Morris*, 2012-Ohio-

2407, ¶ 16, quoting *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 346 (2d Dist. 1992). Because the issue before us is purely a question of law, we apply de novo review. Having established the standard of review, we turn to the Ohio Constitution, from which the right to trial by jury emanates.

*B. The Ohio Constitution Requires Concurrence of*
*at Least Three-Fourths of the Jurors*

{¶ 17} Under the Ohio Constitution, "[t]he right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the *concurrence of not less than three-fourths* of the jury." (Emphasis added.) Ohio Const., art. I, § 5. The right to a trial by jury is "one of the most fundamental and long-standing rights in our legal system, having derived originally from the Magna Carta." *Arbino v. Johnson & Johnson*, 2007-Ohio-6948, ¶ 31, citing *Cleveland Ry. Co. v. Halliday*, 127 Ohio St. 278, 284 (1933). "As Thomas Jefferson stated, the right to trial by jury is 'the only anchor, ever yet imagined by man, by which a government can be held to the principles of it's [sic] constitution.' " (Bracketed text in original.) *Id.*, quoting Letter from Thomas Jefferson to Thomas Paine (July 11, 1789), reprinted in 15 The Papers of Thomas Jefferson 269 (Boyd Ed. 1958).

{¶ 18} The three-fourths-concurrence requirement was introduced at the Constitutional Convention of 1912. *See* 1 *Proceedings and Debates of the Constitutional Convention of the State of Ohio* 91 (1912). The proposed amendment was submitted to and approved by Ohio voters. *See* Barbara Terzian, *Ohio's Constitutions: An Historical Perspective*, 51 Clev.St.L.Rev. 357, 381, 392, 393, fn. 205 (2004). Prior to the 1912 amendment and subsequent law augmenting the amendment, jurors were required to be unanimous to render a verdict. *R.A. Elder & Co. v. Shoffstal*, 90 Ohio St. 265, 270 (1914), *disapproved of on other grounds by Heuck v. State ex rel. Mack*, 127 Ohio St. 247 (1933).

**{¶ 19}** In crafting the amendment, the delegates to the Constitutional Convention of 1912 sought to ease challenges in the jury system that were created by the unanimity requirement. 1 *Proceedings and Debates of the Constitutional Convention of the State of Ohio* at 141. Specifically, the purpose of the amendment was to preserve judicial resources by reducing the number of mistrials and avoiding undue delay and to help ensure that justice is achieved. *Id.* at 170. Some delegates to the convention noted that the unanimity requirement often resulted in modified jury verdicts or mistrials due to the obstinance of a few jurors. *Id.* at 169-170. One delegate said, "One or two obstinate men, by withholding their assent to agree with the majority of the jury, compel the jury either to disagree or agree to a verdict which is of such a nature that it does not do fair and equal justice in the case." *Id.* at 141. Another said, "[S]ometimes there is an obstinate person on the jury . . . [who] thinks he is right and he hangs out, and thus he hangs the jury and there is a mistrial and another case." *Id.* at 170.

> By the addition of the amendment providing for a three-fourths verdict the Constitutional Convention of 1912 clearly did not intend to take away any of the rights or powers theretofore had by the jury. The amendment appears to point in the other direction— that the administration of justice shall be kept as close to the people as possible and to prevent undue delay wherever possible.

*Isaac v. Intercoast Sales Corp.*, 132 Ohio St. 289, 295 (1937). With this understanding, we turn to the issue whether the same-juror rule or the any-juror rule applies to the constitutional requirement that at least three-fourths of a jury in a civil action concur to render a valid verdict. *See* Ohio Const., art. I, § 5.

### C. Same-Juror Rule Versus Any-Juror Rule

{¶ 20} The same-juror rule and the any-juror rule are competing rules of law about which jurors must agree on the elements of a claim to support a verdict. The same-juror rule "requires that the same jurors agree on all of the questions comprising the verdict slip." *Fritz v. Wright*, 589 Pa. 219, 229-230 (2006). If the same three-fourths of the jurors do not agree on all the issues, then the verdict is invalid. *See O'Connell*, 58 Ohio St.3d at 236-237. A major principle behind the same-juror rule is that certain issues are so inseparable or interdependent that it would be illogical to allow jurors who do not agree with the majority on one issue to "vote on subsequent [related] issues as if they agreed with the majority." David A. Lombardero, *Do Special Verdicts Improve the Structure of Jury Decision-Making?*, 36 Jurimetrics J. 275, 301 (1996). The same-juror rule has been adopted by courts to prevent inconsistent answers that render a juror's vote unreliable and invalid. *O'Connell* at 233.

{¶ 21} The most common reason that courts give for applying the any-juror rule is "judicial economy." *O'Connell* at 234. Under the any-juror rule, "all jurors vote on every issue, regardless of their votes on other issues. Any juror's votes need not be logically consistent from issue to issue." Lombardero at 298. Jurisdictions that have adopted the any-juror rule reason that it reduces mistrials and delays in the trial process and that the rule is supported by the presumption that "'each juror will be conscientious and fair in deliberating.' " *O'Connell* at 234, quoting *Williams v. James*, 113 N.J. 619, 632 (1989); *see also* Lombardero at 301, citing *Ward v. Weekes*, 107 N.J.Super. 351 (1969).

{¶ 22} In *O'Connell*, this court considered whether the same-juror rule or the any-juror rule should be applied in comparative-negligence cases. In examining the decisional law from other jurisdictions, we noted that two distinct lines of cases were revealed. *O'Connell* at 232. The line of cases analyzing the same-juror rule found that "the determination as to whether a party is causally negligent is not

independent from, but is indeed inseparable from, the apportionment of negligence." *Id.* at 233. Conversely, the line of cases that adopted the any-juror rule articulated that "jurors who dissent from attributing negligence to a party may still be able to apportion fault to that party." *Id.* at 234. This court adopted the same-juror rule for comparative-negligence cases and held that "three-fourths of the jury must agree as to both negligence and proximate cause, and only those jurors who so find may participate in the apportionment of comparative negligence." *Id.* at syllabus.

### D. Logic Requires Application of the Same-Juror Rule

{¶ 23} Although duty, breach, and proximate cause are separate elements, they are interdependent because they are "integrally related in determining ultimate liability" for negligence. *Ferguson v. N. States Power Co.*, 307 Minn. 26, 37 (1976); *see also Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984) ("to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom"). It would be illogical to allow a juror who does not find a duty or a breach of that duty to vote on the issue of proximate cause. We hold that the same-juror rule extends beyond comparative-negligence cases and applies in all negligence cases in which the elements of negligence are put separately to the jurors through interrogatories. For example, if a jury is composed of eight members, *see* Civ.R. 38(B), then the same six jurors must agree on the issues of duty, breach, and proximate cause to render a logical, valid verdict in favor of the plaintiff.

{¶ 24} Our holding does not limit a juror's ability to participate in the discussion on each element. "[C]ases following the [same-juror] rule have consistently allowed dissenters to participate in the deliberation of other essential issues." H. William Walker Jr., *Vote Distribution in Non-Unanimous Jury Verdicts*, 27 Wash. & Lee L.Rev. 360, 367 (1970); *see, e.g.*, *Guth v. Fisher*, 213 Wis. 323, 331 (1933) (In a case in which the law permitted a verdict upon a five-

sixths vote of a 12-member jury, the court said: "While the jury may properly be instructed that it is their duty to endeavor to arrive at an agreement, and that the same ten should concur in the answers made, they should not be instructed that no other course is permissible."). Therefore, jurors who do not find one element of a negligence action are not barred from participating in deliberation discussions about the other elements—they are prohibited only from voting on them.

{¶ 25} Here, the trial court was correct to deny Hild's motion for a new trial, because Hild was not deprived of her right to have a full jury deliberate on the elements of her claim. The interrogatories in this case were proper and were structured in accordance with the same-juror rule. Because the six jurors who found Ward negligent in her care of Boldman were the only jurors who voted on whether Ward's negligence was the proximate cause of Boldman's injury and death, the verdict was valid. Consequently, the Second District erred when it reversed in part the trial court's ruling denying Hild's motion for a new trial and remanded the cause for a new trial on several issues.

### III. Conclusion

{¶ 26} Under Article I, Section 5 of the Ohio Constitution, laws may be passed in civil cases that render a jury verdict valid when at least three-fourths of the jurors concur. We hold that when jurors are presented with interrogatories that require them to separately decide the elements of a negligence claim, the same-juror rule applies.

{¶ 27} In this case, the trial court properly followed the same-juror rule by limiting the jurors who could answer Interrogatory C—the question of proximate cause—to only those jurors who had answered Interrogatory A—the question of negligence—in the affirmative. Therefore, the trial court's denial of Hild's motion for a new trial was correct, and to the extent that the Second District Court of Appeals reversed that denial, we reverse its judgment. We affirm the portion of the

court of appeals' judgment that affirmed the trial court's judgment. The jury verdict in favor of the hospital is reinstated.

Judgment affirmed in part<br>and reversed in part.

---

**BRUNNER, J., joined by STEWART, J., dissenting.**

{¶ 28} In delimiting which jurors may decide which elements of a negligence claim—that is, in applying the "same-juror rule" to determine which jurors may decide questions of negligence and causation—the majority upends more than 30 years of precedent and erodes the fundamental right to a trial by a full jury. According to the majority, "logic" requires this type of judicial interference. Majority opinion, ¶ 23. Logic is a primary type of analysis to reach conclusions in geometry, but it is not the north star for reaching conclusions of law, especially when prior precedent points the way. And even if "logic" is applied in resolving the legal questions presented in this appeal, it does not lead us where the majority has traveled today. Simply stated, neither logic nor precedent requires application of the same-juror rule in this case, and here, precedent exists and requires otherwise.

{¶ 29} This case involves the questions whether there was negligence and whether negligence was the proximate cause of the injuries. These are separate questions of fact to be determined by a jury. *Dillon v. OhioHealth Corp.*, 2015-Ohio-1389, ¶ 24 (10th Dist.) ("Proximate cause is a separate question not dependent on a finding of negligence."), citing, *Palsgraf v. Long Island RR. Co.*, 248 N.Y. 339 (1928). The right to a jury trial under Article I, Section 5 of the Ohio Constitution entitles a party to have a full jury deliberate on each of these questions. I therefore dissent.

### O'Connell *requires application of the any-majority rule*

{¶ 30} In *O'Connell v. Chesapeake & Ohio RR. Co.*, 58 Ohio St.3d 226 (1991), this court adopted the same-juror rule in comparative-negligence cases to

prevent the inconsistency that could otherwise arise when juries record separate answers to interrogatories on the initial question of the existence of causal negligence by the plaintiff and the defendant (i.e., the question whether the plaintiff and/or the defendant was at fault in causing the injury) and the subsequent determination of the degree of fault as between the plaintiff and the defendant when both are found to have been negligent. *O'Connell* at 230, 235. The same-juror rule was judicially created in the context of comparative-negligence cases to avoid obtaining potentially inconsistent answers to interrogatories from individual jurors. *Id.* at 233. The rule is applied in comparative-negligence cases because "if a juror did not find that a defendant was negligent, that juror could not cogently find that, for instance, the defendant was 70 percent negligent." *Dillon* at ¶ 21. Thus, the same-juror rule applies when the jury has determined that both a plaintiff and a defendant were at fault in causing the injury at issue, and it permits only the jurors who found fault to determine the comparative degree of that fault.

{¶ 31} Conversely, the "any-majority rule" has been utilized in some jurisdictions to preserve the parties' right to a trial by a full jury and assumes that even jurors who do not believe a party was at fault can "'conscientiously and fairly apportion a percentage of fault . . . [—a] mental task [that is] no greater than or different from that expected of jurors in many other settings.' " *O'Connell* at 234, quoting *Williams v. James*, 113 N.J. 619, 632 (1989).

{¶ 32} In *O'Connell*, however, this court decided that between these competing rules, the same-juror rule proved to be the more rational approach in the context of comparative negligence, reasoning that a juror who does not find a party at fault would be unlikely to assign any degree of fault to that party in the apportionment phase when more than one party has been found to have acted negligently. *O'Connell* at 235. We limited application of the same-juror rule to only this apportionment-of-negligence question and noted that the full jury was still required to deliberate on both negligence and proximate cause. *Id.* at 235-236.

Thus, under *O'Connell*, the any-majority rule applies to nonapportionment questions such as negligence and proximate cause, which are the questions at issue in this case.

**{¶ 33}** The Second District Court of Appeals thoroughly explained that in the 30-plus years since *O'Connell* was decided, Ohio's courts of appeals have applied the same-juror rule to the apportioning-fault issue in comparative-negligence cases and have outright rejected application of the rule to other issues. *See* 2023-Ohio-2408, ¶ 60-86 (2d Dist.). Ohio courts have been correct in these applications, thereby upholding a party's right to have a full jury deliberate on every issue except apportioning fault in comparative-negligence cases. And until now, this court has not suggested that the courts of appeals were incorrect in applying the rules in this way. But without any explanation other than its stated reliance on "logic," the majority now holds that the same-juror rule must be applied to the questions of negligence and proximate cause in a pure negligence claim.

**{¶ 34}** It is neither inconsistent nor illogical for a juror to find that a defendant caused an injury without having been negligent. Accidents happen. It is also reasonable for a juror to find that a defendant was negligent but that the negligence was not the proximate cause of the injury. While *O'Connell* explains that the Ohio Constitution requires a concurrence of at least three-fourths of the jury for a valid verdict, *O'Connell*, 58 Ohio St.3d at 236, a trial court cannot allow less than full-jury participation on the questions of negligence and proximate cause, *see Wildenthaler v. Galion Community Hosp.*, 2019-Ohio-4951, ¶ 29.

**{¶ 35}** Relying on *O'Connell* to require application of the same-juror rule in this case makes bad law. The scenario that exists in comparative-negligence cases is simply not present in the questions that were posed to the jury in this case. The majority offers no legal or logical rationale for judicially delimiting which jurors may decide the elements of a pure negligence claim.

*Conclusion*

**{¶ 36}** For the reasons stated above, I dissent. I would affirm the Second District Court of Appeals' judgment and remand the matter to the Montgomery County Common Pleas Court for a new trial. I would also recommend to the Ohio Jury Instructions Committee that the model instructions provided in Ohio Jury Instruction 1 OJI CV § 417.19 be corrected to better explain that full juries must deliberate on questions of proximate cause and negligence.

_____

Brannon & Associates and Douglas D. Brannon; and Adkinson Law and Patrick K. Adkinson, for appellee.

Bieser, Greer & Landis, L.L.P., John F. Haviland, and Jaren A. Hardesty, for appellants Good Samaritan Hospital, Samaritan Health Partners, and Premier Health Partners.

Arnold Todaro Welch & Foliano Co., L.P.A., John B. Welch, and Gerald J. Todaro, for appellants Consolidated Anesthesiologists, Inc., Vincent M. Phillips, M.D., and Sandra Ward.

_____